## Alley et al, v. Hawthorn.

The surety on an appeal bond is not entitled to the benefit of discussion. C. C. 3035. If the judgment appealed from be affirmed, and an execution against the principal be returned unsatisfied, the liability of the surety is fixed. The creditor is not bound to discuss the whole estate of the principal. He is, in no case, bound to do more than to take out an execution (C. P. 596. Stat. 20th March, 1839, s. 20) ; and where, in consequence of a change in the

condition of the estate of the principal, it cannot be reached by that process, no act is required on the part of the creditor to secure his immediate recourse against the surety.

On an appeal from a judgment on a rule against the surety in an appeal bond, no objection to the parties to the judgment rendered on the appeal against the principal debtor, can be considered. The court cannot look beyond the judgment itself.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.
*Elmore* and *W. W. King*, for the plaintiffs.   *Randall*, for the appellant.
   The judgment of the court was delivered by

Eustis, C. J.   The plaintiffs having obtained judgment against *Cary Robinson*, the latter appealed, and, on the 12th of June, 1839, *John N. Hawthorn* became his surety on an appeal bond.   Pending the appeal, *Robinson* made a surrender of his property in one of our courts, became a bankrupt under the bankrupt act, and afterwards died.   The syndic, the assignee, and the curator of his estate, were made parties to the appeal, and the judgment was affirmed in June last.   11 Robinson, 190.   The plaintiffs took out their execution against *Robinson*, which was returned *nulla bona*, and applied, after motion made in court and due notice, for judgment on the bond against the surety, which was awarded. The surety has appealed; and, considering that the plaintiffs can take nothing by reason of their execution, it is necessary to consider his rights without reference to it.

The state of the law in relation to judicial sureties on appeal bonds has been liable to misconception, but it is necessary that it should be settled; and, in so doing, it will be necessary to examine the subject of suretyship somewhat in detail.   On this subject, our Code is so clear in its provisions, that there is no necessity of any reference to jurisprudence in order to explain it.

Suretyship is an accessory promise to *satisfy* an obligation, if the debtor does not.   Civil Code, art. 3004.

The obligation of the surety is to pay the creditor, in case the debtor himself shall not satisfy the debt; and the property of the debtor must be first discussed or seized, unless the surety shall have renounced the plea of discussion, or should be bound, *in solido*, with the debtor.   Ibid. art. 3014. But to these general principles of suretyship, there is an exception in relation to judicial sureties.

The judicial surety cannot exercise the privilege of discussion, but is bound absolutely for the debt.   Ibid. art. 3035.

The effects of judicial suretyship are determined in the laws regulating judicial proceedings.   Ibid. art. 3037.   Accordingly, in the Code of Practice, the different kinds of judicial suretyship in cases of attachment, sequestration, injunction, &c., and the conditions requisite in each case, are provided for.   The 575th article of that Code provides for the security on an appeal to the Supreme Court.   The obligation of the surety is required for the payment of the amount of the judgment appealed from, in case the same be affirmed.   Articles 576, 577 and 578, provide for the amount of the surety.   Article 579 says :

" In the appeal bond it must be set forth, *in substance*, that it is given as surety that the appellant shall prosecute his appeal, and that he shall *satisfy* whatever judgment may be rendered against him, or that the same shall be satisfied out of the proceeds of the sale of his estate, real or personal, if he be cast in his appeal ; otherwise that the surety shall be liable in his place."

We have seen that, by the contract of suretyship, the obligation of the surety is to satisfs the debt in case the debtor does not; that by article 575, the

surety on an appeal bond is bound for the payment of the judgment, if the debtor himself is bound to pay it; and that the judicial surety has not the benefit of discussion; and it is with reference to these principles that we must construe the remedies against sureties. It will be observed that, article 579 does not profess to require the particular form of the bond, but only that it should contain, *in substance*, certain conditions, which, in no reasonable sense. ought to be held to countervail the principles of the law of judicial suretyship as provided for in the Civil Code; but, on the contrary, ought to be so construed as to carry out and give effect to them.

The law certainly contemplates that the creditor should have immediately an additional security, of a good solvent person, to answer for his debt, when an appeal is taken from his judgment; and that this security should be available, it makes provision not only for the solvency, but even for the residence required of the surety. Civil Code, arts. 3011, 3012. Should the judicial surety become insolvent, his place must be supplied by another; and while, in the case of an ordinary surety, the Civil Code gives a direct recourse against the surety, under the reservation of the right of the surety to have the property of the debtor first discussed, yet, in the case of judicial sureties, the privilege of discussion is not allowed.

The right of discussion must be exercised by the surety at his own expense, and by designating available and unincumbered property sufficient to satisfy the debt, and by furnishing the means of having the discussion carried into effect. So that this right, on the part of the surety, in point of fact operates little to the detriment of the creditor. To him it is indifferent, whether his debt be satisfied out of the property of the debtor thus tendered to him for seizure, without expense, by the surety, or out of the property of the surety himself. It becomes merely a question as to which property shall be taken to pay the debt—a mere *exceptio ordinis*, as it was termed under the Roman law. Muhlenburg, Doctrina Pandectorum, § 486.

Article 596 of the Code of Practice, provided for a summary remedy against the surety on an appeal bond, if on the execution there should not be made sufficient property to satisfy the judgment; and, by a law of 1839, the creditor, *on the return of the execution* that no property had been found, was entitled to judgment against the surety after ten days notice. Laws of 1839, p. 170.

The appeal bond sued on is dated on the 12th of June, 1839, subsequent to the law last cited, and its obligations, strictly speaking, ought to be tested by a reference to that law, the creditor having saught to obtain relief by proceeding under it.

The decisions of the late Supreme Court have made no discrimination between article 596 and the law of 1839. In point of fact the difference between them is not material; and there is no necessity for discriminating between them in examining the decisions which the counsel for the appellant has submitted to us, and on which he rests his defence. Both the article and the statute fix the obligation of the surety on the appeal bond, on the failure to satissfy the debt on the execution, of which fact the return is the best evidence. The decisions relied on by the defendant are made in the cases of *Chalaron* v. *McFarlane*, 9 La. 227. *Flower et al.* v. *Dubois et al.* 10 Rob. 191. *Saulet* v. *Trepagnier et al.* 11 Ib. 268.

The first case, that of *Chalaron*, was determined in 1836, and it was then

held by the court that, the liability of a surety on an appeal bond only *begins,* when, on a sale of the *whole* estate of the debtor, the proceeds are found insufficient to pay the debt.

In the case of *Flower,* the court say : " It is true that, in the case of *Chalaron* v. *McFarlane,* this court established the principle that, from the nature of the obligation of sureties in appeal bonds and the terms of their engagements, they derive the right of resisting a recourse against them until it is clearly shown by the creditor, that the sale, of *all* the estate and effects of the principal has proved insufficient to discharge his demand.   See also Code of Practice, arts. 579, 596.   B. and C.'s Digest, p. 181, §23."   The authority of the decision in *Chalaron's* case is here re-asserted.   The case was not determined on the principle settled in that case.   The principal had failed and his estate was *utterly insolvent and worthless,* and the court held that the creditor " was not bound to wait until the final liquidation of an estate from which no benefit was to be derived."

In the case of *Saulet,* the principal debtor on the bond had died, leaving a widow in community and eight children.   The court held that the creditor was bound to discuss the property of the community in the hands of the widow who had accepted it, before he could look to the surety on the appeal bond, and decided the case on the authority of *Chalaron's* case, and art. 579 of the Code of Practice.

These two last cases were decided in the year 1845.   By these cases it is evident that the provision of the Civil Code, that judicial sureties shall not have the privilege of discussion. is completely destroyed.   Indeed, in the case of *Chalaron,* it is expressly decided that it does not apply to sureties on appeal bonds.   But why does it not apply to them?   The law does not say so ; and every reason would induce the belief that the legislature would not wish to make a judicial debt less secure, or more difficult in its recovery, than an ordinary debt.   Indeed, we see that the Code of Practice and the statute of 1839, unite in making the recovery against the surety more direct and expeditious.   The surety is deprived of the trial by jury, unless he shall allege, under oath, that he has a good defence.

By art. 596, as well as by the law of 1839, the creditor is bound to issue an execution on his judgment—not to discuss the whole estate of the debtor, and it is on the return of the execution *nulla bona,* that the obligation of the surety is fixed.   The rule in *Chalaron's* case goes too far—farther than the law warrants, and imposes an obligation on the creditor which neither the letter nor the reason of the law authorizes, and which is diametrically in opposition to the first principles of the law of suretyship, as establibshed in our Code.

It relieves the judicial surety from the ordinary obligations of a common surety, who, in order to avail himself of the privilege of discussion, is bound to point out to the creditor property of the debtor which will be available for the satisfaction of the debt at his own expense, and to furnish the money for defraying the cost of discussion ; whereas. by the rule in *Chalaron's* case, this onerous, expensive and disagreeable task is imposed on the judgment creditor.

Besides, an ordinary surety has no right to offer for discussion property of the debtor which is in litigation.   How then can a judicial surety have the right to involve his creditor in the conflicts of a *concurso,* in which there is necessarily litigation, and no termination of it until the homologation of the tableau of distribution ?

<div style="margin-left: 0;">

ALLEY
v.
HAWTHORN.

</div>

In an earlier case of *Gayoso* v. *Hickey*, 4 La. 302, the creditor is not permitted to reach the surety on an appéal bond until, after due demand, a *fieri facias* shall have been returned *nulla bona.* The decision is very properly guarded, and does not go beyond that point. It was delivered by the late Judge *Porter.*

After maturely considering this subject, we have come to the conclusion that we can impose no obligations on the judgment creditor other than those which the law imposes. He is bound to take his execution, and the surety has thus the means of pointing out property of the principal with which the debt can be satisfied, and of complying with the condition of his bond. This is *his* duty, for his own protection ; and the creditor has done all that is required of him when execution is issued.

But, as in the present case, suppose an execution cannot be lawfully taken out against the property of the debtor—suppose he has made a *cessio bonorum*, or has died and his succession is under administration, will the law turn the judgment creditor over to to a labyrinth of creditors, to await the tardy liquidation of a litigated or insolvent succession ? Is this the security to which he is to be referred on having his rights finally adjudicated upon, after a delay which the surety himself has enabled the debtor to obtain ? If it be so, the judicial suretyship is a mere solemn farce, the commencement rather than the end of litigation, and the provision of the law for the satisfaction of the debt is a mere mockery, not worth having, and would be often attended with more vexation, expense and delay than the pursuit of the debt itself.

We think that, if the creditor cannot take out his execution on the judgment by reason of a change in the condition of the debtor's estate which prevents its being reached by that process, the law requires from him no act in order to secure his immediate recourse against the surety on an appeal bond, and that we can require none.

The defendant and appellant has pleaded, in defence of this action, that the plaintiffs are bound to discuss the estate of the insolvent in the hands of the syndic. Under our view of the law the plaintiffs are under no such obligation.

There have been objections made to the parties to the judgment rendered on the appeal against the principal debtor, *Robinson*, but we cannot look beyond the judgment itself.

The bills of exception taken to the admission of evidence are not tenable.

<div style="text-align: right;">*Judgment affirmed.*</div>