PONDER, Justice.
 

 This is an appeal from a judgment against a surety on an appeal bond.
 

 After hearing the argument of opposing counsel, reading their briefs, careful examination of the record in this case, and a careful reading of the written reasons for judgment of the trial court, we are of the opinion that the written reasons for judgment of the trial judge correctly states the facts and properly disposes of the issues raised herein. Therefore, we adopt the written reasons for judgment of the trial court and make them the reasons of this Court:
 

 “On May 22, 1930, the factory situated on the plantation of the Clover Ridge Planting & Manufacturing Company, Inc., was destroyed by fire. The said corporation on the date mentioned was in receivership and its status in that regard has since remained unchanged. The property was insured in several insurance companies with A. I. Picard, receiver of the Clover Ridge Planting & Manufacturing Company, Inc., named as the assured in all of the policies that were in force at the time of the fire and the policies all contain a clause reading as follows: ‘Any loss proven to be due the assured under this policy is held payable to the holder or holders of first mortgage notes as their, interest may appear, subject, however, to all the conditions of this policy balance if any payable to the assured.’ The Canal Bank & Trust Company was in possession of the above mentioned policies of fire insurance at that time as the holder of all outstanding notes of the Clover Ridge Planting & Manufacturing Company, Inc., secured by first mortgage on the property described in said policies. At various times previous to the occasion of the loss by fire the Canal Bank & Trust Company by letters to the said receiver expressly subordinated its said mortgage rights in favor of holders of receivership certificates and also acquiesced in the operations of the receivership of which it had intimate knowledge, and its attendant receivership charges. The Canal Bank &. Trust Company contended that it was entitled to be paid the proceeds of said insurance policies direct and that said proceeds should not be paid into the said receivership or distributed in said receivership proceedings. The receiver, A. I. Picard, contended that the proceeds of said policies should be paid to him as receiver to be distributed by him in the receivership proceeding under order of Court. As a result of this controversy a written agreement was entered into and signed by (1) A. I. Picard, receiver, (2) Canal Bank & Trust Company and (3) the Insurance Companies on April 20, 1930, and approved by the interested creditors of said receivership, whereby, full and complete compromise payment and settlement of all claims against the said insurance companies under the aforesaid policies was made for $68,643.84 and said amount was paid to the Canal Bank & Trust Company, as trustee, without prejudice to any right, claim or demand of A. I. Picard, receiver, and/or of the Canal Bank & Trust Company, and/or
 
 *84
 
 any holder or holders of receiver’s certificates or other creditor or claimant of said funds, or any action which any of them may exercise for the recovery of same. It was further agreed by said parties in said written contract that said insurance money, or any part thereof would not be paid out by the Canal Bank & Trust Company except upon presentation to said bank of a duly certified copy of a final judgment of court, or úpon a written order signed by Guión and Upton, Terriberry, Young, Rault and Carrol, and Spencer, Gidiere, Phelps and Dunbar.
 

 “With the said sum of $68,643.84 still in the possession of the Canal Bank & Trust Company under the terms of the agreement hereinabove mentioned and with its status yet undetermined, the receiver of Clover Ridge Planting & Manufacturing Company filed a provisional account in said receivership proceedings on April 18, 1931. In said provisional account the said insurance money was set forth in ‘Item No. 5’ as a receivership asset, being described as ‘amount received from Insurance Companies in payment of fire loss on sugar factory and deposited in trust with Citizens Office of Canal Bank & Trust Company.’ Said account also provided a proposed distribution to various receivership creditors of cash on hand amounting to $69,055.84, of which amount $68,643.84 was the said insurance money in possession of the Canal Bank & Trust Company under said escrow agreement. To this provisional . account the Canal Bank & Trust Company filed an opposition alleging in Article VI of said opposition among other
 

 things, that ‘* * * opponent specifically opposes said distribution in its entirety as shown on said provisional account and more particularly does opponent oppose any distribution whatsoever of any part of said sum of sixty eight thousand six hundred forty three and 84/100 (68,643.84) dollars, appearing as item 5 of receipts and cash on hand, on said account, inasmuch as said receiver of said corporation or any creditor other than your opponent has no right, title or interest whatsoever to said sum, as it legally belongs exclusively and entirely to your petitioner.’ In Article IV of said opposition the Canal Bank & Trust Company stated that it was in possession of the said sum of $68,643.84, insurance money, by virtue of said escrow agreement dated August 22, 1930, a copy of which is annexed to and made part of said opposition. And the prayer of said opponent recites: ‘Wherefore, opponent prays that this opposition ■may be filed and maintained; that said provisional account be amended by striking therefrom Item 5 of receipts and cash on hand being the amount of the proceeds of fire insurance policies on sugarhouse, machinery and equipment, etc., on the property of Clover Ridge Planting & Manufacturing Company, Inc., amounting to the sum of sixty eight thousand six hundred forty-three and 84/100 dollars ($68,643.84); that opponent be recognized as the sole rightful and legal owner of said sum, as .the holder of said first mortgage notes and said policies of insurance; and that said account be further amended .by striking therefrom all the items which are not fully proved to be due, and that all other items appearing thereon be reduced to proper and reasonable
 
 *86
 
 amounts, that said account be further amended by correctly ranking the order in which holders of the receiver’s certificates of said corporation are to be paid out of the property and assets of said corporation.’
 

 “Other oppositions to said provisional account were filed and oppositions and pleas of estoppel and other pleas to the said opposition of the Canal Bank & Trust Company were also filed by Federal Intermediate Credit Bank of N. O., La.; State Agricultural Credit Corporation, Inc., Penick and Ford Ltd., Inc., Chalmette Petroleum Corporation and Woodward-Wight Co., Ltd., praying that the said opposition of the Canal Bank & Trust Company be dismissed.
 

 “These various oppositions were tried in due course and on November 26, 1932, in a written opinion filed in the record the District Court rendered judgment maintaining the pleas of estoppel filed by the creditors above mentioned to the said opposition of the Canal Bank & Trust Company and thus giving said creditors priority to said bank, amending said account, and holding that the insurance money in the possession of the Canal Bank & Trust Company, as aforesaid, was an asset of the receivership and that the status of the Canal Bank under the provisions of the ‘loss payable clause’ embodied in the various policies is that of a conditional appointee of the mortgagee. The opinion of the District Court in part reads: ‘ * * The contracts of insurance show that the receiver was the assured, and although no decision has been cited which is directly in point in every detail with the case at bar, I am satisfied that the amounts collected in payment for the loss constitute an asset of the receivership, and that the status of the Canal Bank under the provisions of the ‘loss payable clause’ embodied in the various policies is that of a conditional appointee of the mortgagor/ Quoting further from said opinion: ‘ * * * Aside, however, from the express subordination of its mortgage rights as shown by said letters, I think the intimate knowledge which said bank had of the operations of the receivership, and their acquiescence in same, estopped the Canal Bank from asserting its claim (as a first mortgage creditor) to the proceeds of said insurance to the prejudice of those creditors who hold receiver’s certificates for money loaned to the receiver to operate the business of the corporation; and I think said knowledge and acquiescence also estops the bank from asserting said claim to the prejudice of creditors whose claims are to be taxed as costs of the receivership, which, of course, includes claims for materials and supplies sold to the receiver to enable him to operate said business.’
 

 “The judgment was read and signed on January 4th, 1933. It did not sustain the contention of the Canal Bank & Trust Company made in its said opposition to said provisional account that said item 5 ($68,643.84 insurance money in possession of said bank) be stricken from said account and that said bank be recognized as the sole rightful and legal owner of said sum as the holder of said first mortgage notes and said policies of insurance, and it maintained the opposition of said bank only to the extent of amending said account by
 
 *88
 
 striking therefrom the claim of the State Agricultural Credit Corporation designated as paragraph ‘D’ of item
 
 #7,
 
 by ordering that items 15 (a) and (b) covering certain receiver’s certificates be paid to Canal Bank & Trust Company instead of the Geismar & Heyman, Inc., and by holding that receiver’s certificates due Canal Bank & Trust Company mentioned under item 16 (b) of said account shall bear
 
 7%
 
 per annum interest from December 2nd, 1929. Said judgment, in addition to other decrees, sustained the said plea of estoppel to the said opposition of the Canal Bank & Trust Company, and also decreed ‘that as herein-above amended, the said account be approved and homologated and that the funds be distributed in accordance herewith.’
 

 “By said judgment the issue of the ownership of said insurance money amounting to $68,643.84 was settled in favor of the said receiver who took the position that said insurance money was a receivership asset and carried it as such in his said provisional account. This judgment adjudicated the rights of all interested parties under said escrow agreement by the expressed terms of which the Canal Bank & Trust Company was obligated to pay the said money to the party declared to be the owner thereof, by ‘final judgment of court.’ It is a judgment in favor of A. I. Picard, receiver, for $68,643.84 which the Canal Bank & Trust Company was obligated to pay to said receiver because of the said final judgment of court declaring same to be a receivership asset and directing that said amount in addition to another very small amount, be distributed by said receiver to the various receivership creditors in accordance with the account as approved and homologated.
 

 “On January 10th, 1933, on motion of Canal Bank & Trust Company, opponent, presented by its attorneys, the District Court ordered that a suspensive and devolutive appeal be granted to the said Canal Bank & Trust Company, returnable to the Supreme Court of Louisiana on the 1st day of February, 1933, upon said party furnishing bond with good and solvent security; according to law, for a suspensive appeal, and bond with good and solvent security in the sum of seven hundred and no/100 dollars, for a devolutive appeal. On January 10th, 1933, the Canal Bank & Trust Company filed a bond signed by it as principal and by New Amsterdam Casualty Company as surety in the sum of $45,500, containing the following stipulations and conditions :
 

 “ ‘Whereas, the above bounded, Canal Bank & Trust Company, has obtained an order of suspensive appeal from a certain judgment rendered against it on its opposition to the Receiver’s account in the Case of Receivership of Clover Ridge Planting and Manufacturing Co., Inc., No. 272 of the Docket of the Eighteenth Judicial District Court for the Parish of Iberville on the 26th day of November, 1932, and signed on the 4th day of January, 1933.
 

 “ ‘Now the condition of the above obligation is such, that the above bounden Canal Bank and Trust Company, shall prosecute the suspensive appeal and shall satisfy whatever judgment may be rendered against it,' or the same shall be satisfied by the
 
 *90
 
 proceeds of the sale of its estate, real or personal, if it be cast in the appeal, otherwise that the said New Amsterdam Casualty Company shall be liable in its place.’
 

 “After the filing of said bond this controversy was taken in due course on appeal to the Supreme Court of Louisiana and in the meantime the judgment of the District Court was suspended and the Canal Bank & Trust Company retained in its possession and withheld payment to the said receiver of the sum of $68,643.84 which it was obligated to pay to him by virtue of said final judgment, as aforesaid. The Supreme Court amended the judgment of the District Court by reinstating the claim of the State Agricultural Credit Corporation and as thus amended affirmed the judgment of the lower court. 178 La. 302, 151 So. 212, 222. And on rehearing the Supreme Court said: ‘It is the bank’s theory, and its counsel strenuously insist, that by virtue of this loss payable clause attached to the policies, the entire proceeds of the policies should be paid to it. * * * The amount received as proceeds of the fire policies being an asset of the receivership, it was manifestly the duty of the receiver to distribute that amount among the creditors according to the rank of their claims. * * * Our holding that the amount collected from the insurance companies constituted an asset of the receivership disposes of the case in so far as the bank is concerned.’ And in a later case, In re Canal Bank & Trust Co., Intervention of Picard, et al., 182 La. 13, 161 So. 5, the Supreme Court of Louisiana made the following comments relative to its judgment in this controversy:
 

 “‘The principal asset.of the receivership' was a deposit in escrow of the proceeds of certain insurance policies in the Canal Bank & Trust Company prior to the time it was placed in liquidation; the right to the ownership thereof having been contested and adjudicated in the matter of In re Clover Ridge Planting & Manufacturing Co., Inc., 178 La. 302, 151 So. 212. * * *
 

 “ ‘The answer to their contention is the judgment itself, which established both the status of the fund in question as a receivership asset and the manner in which the fund shall be distributed among the receivership creditors. * * *
 

 “ ‘ “The amount received as proceeds of the fire policies being an asset of the receivership, it was manifestly the duty of the receiver to distribute that amount among the creditors according to the rank of their claims.” * * *
 

 “ ‘The receiver has the exclusive right to the possession of the assets of a receivership.’
 

 “While this case was pending in the Supreme Court of Louisiana the Canal Bank & Trust Company went into judicial liquidation and its affairs were placed in charge of the State Bank Examiner who appointed a liquidator, and on motion duly made the said Bank Examiner and the liquidatoi as representatives of the Canal Bank & Trust Company,. opponent and appellant, were made parties herein on May 26, 1933.
 

 “After the decision of the Supreme Court herein the receiver filed a petition of intervention in the matter of the Liquidation of. Canal Bank & Trust Company, No. 202, 252 of the Docket of the Civil District
 
 *92
 
 Court for the Parish of Orleans, to recover the principal asset of the receivership, the proceeds of the insurance policies received by the Canal Bank & Trust Company, under an escrow agreement, prior to the time it was placed- in liquidation. This proceeding was approved and authorized by the Judge of this Court on April 14, 1936. Judgment was rendered on said intervention, by the judge of the Civil District for the Parish of Orleans on June 17th, 1936, and signed on June 23, 1936, in favor of Achille I. Picard, receiver of Clover Ridge Planting & Manufacturing Company, Inc., intervenor, and against Jasper S. Brock, State Bank Commissioner, through Harry C. Thompson, his special agent in charge of the liquidation of Canal Bank & Trust Company, and John F. Finke, liquidator of Canal Bank & Trust Company, defendants in intervention, for the full sum of twenty-four thousand, twenty-five and 34/100 ($24,025.34) dollars, being the ratable dividend of thirty-five per cent (35%) payable to ordinary creditors of Canal Bank & Trust Company in Liquidation upon the liability of Canal Bank & Trust Company, in Liquidation, arising from the deposit of sixty-eight thousand six hundred forty-three and 84/100 dollars ($68,643.84) in Canal Bank & Trust Company under the escrow agreement dated August 22nd, 1930 and described in Article III of the petition of intervention, and for all costs of Court. The said amount of $24,026.34 was paid to the receiver in accordance with said decree and it is the only amount that has ever been paid to the receiver' on said indebtedness. And according to a letter dated November 22, 1933, from the Canal Bank & Trust Company, in Liquidation, to Guión and Upton, attorneys, and also a petition of the State Bank Commission in the record it appears that the said money in possession of said bank was being supplemented with interest at the rate of two per cent up to May 30, 1933, the date on which it went into liquidar tion.
 

 “And after the said receiver had taken all the necessary steps to enforce payment of said judgment in full against the liquidators of the Canal Bank & Trust Company and had been unsuccessful to the extent hereinabove stated, he instituted the present proceeding against the New Amsterdam Casualty Company, surety on said suspensive appeal bond, for the balance on said judgment amounting to $44,618.50 and also for interest thereon from August 22, 1930, to January 4, 1933, at the rate of 2% per annum and from January 4th, 1933, until paid at the rate of 5% per annum and all costs of Court.
 

 “The New Amsterdam Casualty Company in defense denies that it is indebted! to the receiver in any sum whatsoever and! also avers as follows: — (1) ‘That the allegations upon which this suit is brought herein is an absolute nullity because the judge failed to fix the amount of the bond’ for the suspensive appeal and that therefore the order for an appeal was an absolute nullity because there was no> validi bond which was or could have been given, under said order and that no liability under said bond arose against your respondent.’’ (2) ‘That if such amount was deposited and any loss resulted from said deposit it
 
 *94
 
 arose not out of the granting of a suspensive appeal to the Canal Bank & Trust Company as an opponent to the account of the receiver, hut arose out of' the breach of the contract of deposit if any between the Canal Bank & Trust Company and Achille I. Picard, receiver herein;’ and (3) ‘That under its bond * * * it was liable only in case the Canal Bank & Trust Company, as an opponent to the account of the receiver, should fail to respond to any judgment rendered against it, and that no judgment was rendered against the Canal Bank & Trust Company whereby it was obligated to pay any sums of money, but that on the contrary the said judgment against the Canal Bank & Trust Company merely dismissed its opposition, and rendered it liable, if for anything, only for the costs incurred by the receiver in the defense of his account. Said defendant in rule also excepted on the ground that the action herein is premature.’
 

 “It is well settled that a judgment disposes of all the issues and controversies raised in the case and creates an estoppel barring the parties from any further legal action involving the identical subject matter considered and disposed of by said judgment. And the judgment should be so construed as to give effect to every word and part of it and the effects and consequences which follow from its terms whether expressed or implied. It is also a well recognized principle that a judgment is read in the light of the pleadings. Authorities:
 

 “Succession of Wm. Regan, 12 La.Ann. 156: ‘When a judgment has once been signed by the Judge, it should be interpreted by the court which rendered it, as well as by all others, as the foreign writers say, objectively; that is, it should be construed with reference to the pleadings and the subject matter of the controversy, according to the natural and legal import of the terms used.’ Davis v. McCain, 171 La. 1011, 132 So. 758; Peniston v. Somers, 15 La.Ann. 679 ; 23 Cyc. page 1101, Construction and Operation of Judgments.
 

 “The first question for determination is whether the order granting .the suspensive appeal herein is invalid as contended by the defendant. Now in rendering his decision the District Judge at the outset observed that the said fire insurance money was to remain in escrow, that is, in the possession of the Canal Bank & Trust Company, until the rights of the various parties to this litigation be judicially determined. And the said District Judge then and there proceeded to judicially determine that the said insurance money was a receivership asset and that said insurance money with an additional amount set out in the account be distributed by said receiver to the various receivership creditors in accordance with the account as approved and homologated. This decision of the District Court is certainly in favor of A. I. Picard, receiver, for the sum of $68,-643.84 in possession of the Canal Bank & Trust Company, and the said bank was obligated to pay said amount then and there because the rights of all interested parties had thus been judicially determined. In other words, the judgment in favor of said receiver is for a specific sum of money, and the District 'Judge fully complied with
 
 *96
 
 the law and fixed the bond when he signed the order in this case granting a suspensive appeal. 'Upon said party appellant furnishing bond with good and solvent security according to law.’ Authorities:
 

 “(1) Leon Godchaux Co., Ltd. v. Gall (In re Kling), 139 La. 750, 72 So. 217: 'Syllabus by the Court. The amount of the bond that an appellant, meaning anyone who takes the appeal, is required to give, in order to suspend the execution of a judgment for a specific sum, is determined by Code Prac. art. 575, and is not to be fixed by the judge in cases where the fund in dispute, and from which such judgment may be paid, is not in the registry of the court.’
 

 “(2) Succession of Rusha, 158 La. 74, 103 So. 515: The executor appealed from a judgment directing him to place the appellee and her children on his account for a legacy of $7,000. The trial judge did not fix the amount of the appeal bond, but allowed the suspensive appeal conditioned on the appellant furnishing bond according to law. The Supreme Court held -that the order of the district judge granting the suspensive appeal was valid and in accordance with law.
 

 “(3) Succession of Huxen, 149 La. 61, 62, 88 So. 687: Where judgment is for a specific sum of money, obtained by opposition to final account of administrator, and where the order of the judge grants the suspensive appeal ‘upon mover furnishing bond with good and solvent surety, according to law’ the order and,the law thereby fix the amount.
 

 “(4) Article 575 of Code of Practice. ■
 

 “The provisions of the law relative to suspensive appeals are intended to protect pending the appeal the party in whose favor a judgment has been rendered and, therefore, a specific bond is required of the appellants. The amount of this bond should be one-half over, the amount of the judgment, but the parties may fix the amount of the appeal bond by agreement among themselves. And since the record shows that no complaint at any time was ever made by the appellee or any one else relative to the suspensive appeal bond herein, it is conclusive that the parties interested either agreed or acquiesced ■as to the amount of said bond, and they were within the law in doing so. Authorities :
 

 “State ex rel. Pontchartrain R. Co. v. Judge of. the Superior District Court et als., 27 La.Ann. 697: ‘According to law a suspensive appeal is to be taken within ten days from the notification to the party cast of the judgment complained of. But the requirements of the law are not prohibitory, and it is understood by this court that any engagement not prohibited by law and not repugnant to good morals may be enforced between the parties thereto. The law does not say that the parties may not agree that the time for making an application for a suspensive appeal may not be extended, nor does it forbid the parties from fixing the amount of the appeal bond among themselves. The provisions of the law on the subject are for the protection of the parties in litigation. Either party may waive his right to this protection, and if he chooses to do so and contracts to do so, his contract can.be-enforced.’'
 

 
 *98
 
 “Let us consider defendant’s second objection to its liability as surety under the suspensive appeal bond. The escrow agreement contemplated that the money would remain in possession of the Canal Bank & Trust Company only until the ownership thereof would be judicially determined, at which time said bank was obligated to pay said amount to the owner thereof as determined in a final judgment of Court. This final judgment was rendered in the District Court on the 26th day of November, 1933, and signed on the 4th day of January 1933, and by virtue of said judgment the Canal Bank & Trust Company was not only obligated to pay the insurance money to the receiver at that time, but could have been compelled legally to do so. The Court having decided that the insurance money was a receivership asset to be distributed by the receiver, the receiver was entitled by law to the immediate possession of said money as a receivership asset. The Canal Bank & Trust Company could no longer retain possession of said money by virtue of the escrow > agreement because the contingency contemplated in said agreement had happened, that is the determination by the Court of the rightful owner thereof. There was only one way that the Canal Bank & Trust Company could continue in possession of said insurance money and that was by suspending the effect of that judgment with a suspensive appeal. Thus the said money was still in possession .of the Canal Bank & Trust Company at the time it went into liquidation not by virtue of said escrow agreement, by which it had originally .come into possession of same, but by reason of the said suspensive appeal. Thus the loss is due to the taking of the suspensive appeal and the insolvency of said bank does not release the said surety of its liability under said bond. Authorities:
 

 “(1) 41 A.L.R. 477: ‘The substantial weight of authority is to the effect that the surety on an appeal or supersedeas bond is not released from liability thereon by the discharge of his principal in bankruptcy or insolvency proceedings pending the appeal and before the entry of judgment in the appellate court.’
 

 “(2) Serra é Hijo v. Hoffman, 30 La. Ann. 67.
 

 “(3) Wertham Bag Co. v. Roanoke Merc., Co., 157 La. 312, 102 So. 412.
 

 “The third reason given by said surety in denying liability on said appeal bond is based on its assertion that no judgment was rendered against the Canal Bank & Trust Company whereby it was obligated to pay any sums of money and that the said judgment merely dismissed its opposition and rendered it liable only for costs, if anything. This position would be plausible if the opposition of the Canal Bank & Trust Company was merely the usual opposition filed to the account of a receiver with the funds in his possession as an officer of the Court. Such is not the situation in this case where the opposition of the Canal Bank & Trust Company put in issue the ownership of the insurance money in possession of said bank, and where the Court in rendering judgment declared that said money belonged to the receiver as a receivership asset and not to the said bank. As stated, by this judgment
 
 *100
 
 the bank was obligated to pay forthwith to the receiver the said insurance money in its possession. This is the real judgment against the Canal Bank & Trust Company, which said bank suspensively appealed from and which the surety obligated itself to satisfy if said bank failed to do so. Authorities:
 

 “(1) 4 C.J. page 1252, par. 3321: — ‘Construction of Conditions. The ordinary canons of interpretation of contracts are to be applied in the construction of appeal securities, the rule being that the contract will, where possible, be so construed as to carry out the intention of the parties. The conditions of the appeal bond control the liability of the obligors rather than the recitals. In construing the conditions of an appeal bond the court will examine the entire instrument to ascertain its meaning and consider not only the subject matter but the situation of the parties and their purpose in making the contract.’
 

 “(2) Blanchard v. Gloyd, 7 Rob. 542: Extract on page 548: — ‘It is said, that the obligation of a surety is to be construed strictly both in law and equity; that his liability is not to be extended by implication; and that he has a right to stand upon the very terms of his contract. This is true; but it is equally true, that the object of all written contracts is to express the intention of the parties. * * * A bond signed by a surety is as much his contract as it is the contract of his principal; and both will remain bound, as it is shown they really intended to bind themselves,’ etc.
 

 “(3) The rule of strict construction is limited by that controlling principle that sureties are presumed to know the nature •of the obligation and to intend its obvious purpose. Adler v. Potter, 57 Ala. 571; Mathews v. Morrison, 13 R.I. 309; Crist v. Burlingame, 62 Barb., N.Y., 351.
 

 “The authorities cited by counsel for said surety are not applicable to the situation before the Court. The case of Blanch-in v. The Fashion, 10 La.Ann. 345, is the principal authority relied on by defendant in its defense herein. That case, however, is not pertinent to the issues presented • herein as is clearly shown by the following authorities:
 

 “(1) State ex rel. Wassell v. Judge, 22 La.Ann. 115: Extract on page 116: ‘The
 
 ’
 
 case of Blanchin v. The Steamer Fashion, 10 La.Ann. 345, is not in point. There was a contest between the creditors for the funds, in the hands of the court arising from the sale of the,boat; and the court held there was no standard fixed by law for .the bond and security to be given by the plaintiff therein in obtaining an appeal; and.it was obviously a matter for the discretion of the judge. But here is a judgment against a party for a specific sum, a third person intervenes and seeks to arrest the operations of that judgment.’
 

 “(2) State ex rel. Algiers Brewing Co. v. King, Judge, 46 La.Ann. 490, 15 So. 147: Extract on page 498 [of 46 La.Ann., on page 149 of 15 So.] : ‘To the foregoing authorities others of like import might be added ad infinitum; but others are not deemed necessary. The tenor and purport of them all is when the matter, fund, or property in dispute is not in possession of the appellant, and he is not the party con
 
 *102
 
 cerned by the judgment that is appealed from, but the res is in the hands or custody of the court, appellant is entitled to suspend proceedings under such decree, on furnishing a bond that will cover costs.’
 

 “It is an undeniable fact that the suspensive appeal bond herein given has accomplished the purpose for which it was given, that is, to suspend the judgment in favor of the receiver for $68,643.84 which the Canal Bank & Trust Company had in its possession and was legally obligated to pay and it would not be in accord with law and equity to permit said bank and its said surety on said appeal bond to free themselves from its disadvantages. For it is well recognized that in whatever manner one shall appear to have deemed it proper to bind himself to another, he shall remain bound. Authorities:
 

 “(1) 32 Cyc., page 69: ‘Estoppel or Waiver, a. In General. As a rule a surety cannot deny facts recited in his obligation unless such recital was inserted under a mistake of fact, and he will not be allowed to claim that a bond was given without consideration, that the judicial proceedings in which it was given were irregular, or that the necessary preliminary steps were not taken. If the obligation has accomplished the purpose for which it was given the surety will not be permitted thereafter to free himself from its disadvantages,’ etc.
 

 “(2) Villere v. Armstrong et al., 4 Mart., N.S., 21: Surety cannot object that the forms of law were not observed to give effect to the bond, their signature of which is an implied waiver of such objection.
 

 Extract page 25: ‘That in whatever manner a person shall appear to have deemed it proper to bind himself to another, he shall remain bound.’
 

 “(3) State v. Winfree’s Securities, 12 La.Ann. 643;
 

 “(4) Price, Converse & Smith v. Kennedy, 16 La.Ann. 78.
 

 “As to the items of interest claimed, it appears that the sum of $2,367.03 was received by the Canal Bank & Trust Company on the 10/31/30 and that interest was allowed thereon by said bank at the rate of 2% per annum from 10/31/30. The remainder of the amount claimed from the surety herein appears to have been received by said bank on 10/30/30 and interest was allowed thereon at the rate of
 
 2%
 
 per annum from said date. It is therefore the opinion of the Court that said bank was obligated* to pay said interest on the said amounts from their respective dates of deposit mentioned to January 4th, 1933. This interest when added to the principal amount claimed exceeds the sum of $45,-500 for which said surety has bound itself herein. Since the judgment against the Canal Bank & Trust Company did not allow interest at the rate of 5% per annum it is the opinion of the Court that said interest cannot be allowed herein against the said surety. And the liability of said surety company being fixed in said suspensive appeal bond at $45,500, it is the opinion of the Court that the’.New Amsterdam Casualty Company, as said surety, is liable only for said principal ■ amount and said interest in the, total sum and amount of $45,500. .
 

 
 *104
 
 “In the briefs submitted by counsel for defendant the exception of prematurity filed herein was not mentioned and the position of said surety on that proposition has not been indicated to the Court. In view of the legal authorities, however it is the opinion of the Court that this plea or exception is without merit and should be overruled. The following authority is pertinent :
 

 “(1) Alley v. Hawthorn, 1 La.Ann. 122: ‘The surety on an appeal bond is not entitled to the benefit of discussion. C.C. 3035. If the judgment appealed from be affirmed, and an execution against the principal be returned unsatisfied, the liability of the surety is fixed. The creditor is not bound to discuss the whole estate of the principal. He is, in no case, bound to do more than to take out an execution (C.P. 596. Stat. 20th. March, 1839, s. 20); and where, in consequence of a change in the condition of the estate of the principal, it cannot be reached by that process, no act is required on the part of the creditor to secure his immediate recourse against the surety.’
 

 “For the foregoing reasons, and considering the authorities mentioned, it is the opinion of the Court that the exception or plea of prematurity should be overruled and judgment is rendered herein accordingly. It is also the opinion of the Court that the rule issued herein should be made absolute and that judgment should be rendered in favor of Achille I. Picard, receiver of the Clover Ridge Planting & Manufacturing Company, and against "the New Amsterdam Casualty Company in the full sum of forty five thousand, five hundred dollars ($45,500) and all costs of Court, and judgment is rendered herein accordingly.”
 

 For the reasons assigned the judgment is affirmed.
 

 O’Niell, C. J., does not take part.