# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #066

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Per Curiam handed down on the **7th day of November, 2016**, is as follows:


**PER CURIAM**:


2016-CJ-0710        JEREMY GEORGE, ET UX. v. ROBBIE DUGAS, ET UX. (Parish of Acadia)

Accordingly, we recall our order of May 20, 2016, as improvidently granted, and we deny plaintiffs' application.

WEIMER, J., dissents and assigns reasons.
CLARK, J., dissents with reasons.
HUGHES, J., concurs and assigns reasons.
CRICHTON, J., dissents for the reasons assigned by Justice Weimer.

# SUPREME COURT OF LOUISIANA

## No. 2016-CJ-0710

## JEREMY GEORGE, ET UX.

## VERSUS

## ROBBIE DUGAS, ET UX.

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD CIRCUIT, PARISH OF ACADIA

**PER CURIAM**

We granted plaintiffs' application for a writ of certiorari in this case on May 20, 2016. After receiving briefing from the parties, hearing oral arguments, and reviewing the record, we conclude the judgment below does not require the exercise of this Court's supervisory authority. Accordingly, we recall our order of May 20, 2016, as improvidently granted, and we deny plaintiffs' writ application.

# SUPREME COURT OF LOUISIANA

## NO. 2016-CJ-0710

## JEREMY GEORGE, ET UX.

## VERSUS

## ROBBIE DUGAS, ET UX.

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*THIRD CIRCUIT, PARISH OF ACADIA*

**WEIMER, J.**, dissenting.

I write out of disappointment that a writ of certiorari unanimously granted by this court, and subsequently briefed and argued by the parties, is summarily recalled by a majority of this court.

In this case, the court was confronted with construing a child placement judgment, directly affecting the lives of three young children (ages 6, 9, and 14) and two couples–each couple believing it is in the children's best interest to reside with them. The judgment vexed the lower courts, which reached opposite conclusions as to whose home the children should be placed in.

The Georges are the biological parents who claim they have overcome substance abuse issues. The Georges deserve an answer from this court. The Dugases are foster parents who took over parenting of the children when the state intervened and removed them from the Georges. The Dugases deserve an answer from this court. The three young children are entitled to an answer from this court because their future is at issue.

The interests of the parents, the children, and society at large in properly construing the judgment at issue are profound. Biological and foster parents, as well

as children in need of care throughout the state are left with unanswered questions, as is the state of Louisiana, which is, unfortunately, too frequently called upon to take custody of children. The legal issue here is *res nova*, as this court has never been tasked with construing a judgment in a Child In Need of Care (CINC) case when the judgment was undoubtedly final, but also failed to meet all formalities for concluding a CINC case. Other issues include: Does the custody regime of the Civil Code apply or does the guardianship regime of the Children's Code apply? What is the burden of proof and which party is assigned that burden? The lower courts labored at length over these questions and the litigation has entered its fourth year without definitive answers. This court should provide an opinion.

In recalling the writ of review this court granted earlier this year,[1] the majority has not provided answers, but has added another chapter to the see-saw ride these parents and–most unfortunately–the children have experienced in this litigation. This sad situation runs counter to this court's earlier observation that a child's "best interest and welfare...may be irreparably damaged not only by a mistaken change in custody but also by the effects of an attempted or threatened change of custody on grounds that are less than imperative." **Bergeron v. Bergeron**, 492 So.2d 1193, 1200 (La. 1986).

---

[1] This court has established criteria for determining when a writ should be granted. See La. S. Ct. Rule X. This court unanimously granted the writ; thus, it cannot be denied that at that time a majority of this court felt this case was worthy of granting, docketing, oral argument, and further consideration before an opinion was rendered. Nothing has changed. There exists no rule for determining when a writ, which has been granted, should be recalled. Thus, parties who have prevailed upon this court to grant a writ are afforded no guidance in determining why a writ granted on May 20, 2016, is recalled on November 7, 2016, without an opinion.

In the past, I have voted to recall writs, but I have come to the conclusion this is a poor practice. See **State v. Crandell**, 05-1060 (La. 3/10/06), 924 So.2d 122 (Weimer, J. dissenting: "[A]fter having granted the writ, the unique facts and circumstances of this case dictate that we should resolve this matter on the merits."). As a more recent example of my view, see **Davis v. Prescott**, 13-0669 (La. 11/5/13), 130 So.3d 849, 851 (Weimer, J. dissenting: "I respectfully dissent from the majority's decision to recall the writ. Having granted the writ, I would resolve this case on the merits based on the issues and the record before this court.").

Recalling the writ in this matter is a poor reflection on a court which otherwise is diligent, conscientious, and oriented to resolving difficult issues.

In my view, this court has recalled writs entirely too often.[2] To do so here has heaped uncertainty, excruciating delay, and turmoil into this child placement matter.

The Dugases represented themselves in this matter; the Georges retained counsel. One can only imagine the time, effort, and emotion that was expended in applying to this court for a writ of certiorari, having the writ granted, and then arguing this case before this state's highest court. Thereafter, two sets of parents and three children are effectively being told, "never mind." Disappointingly, the parties will be left with the court of appeal judgment, which largely relied on a case this court overruled, **Cutts v. Cutts**, 06-33 (La.App. 3 Cir. 5/24/06), 931 So.2d 467. See discussion *infra*.

---

[2] This court's own performance standards counsel against not rendering a decision in this *res nova* case, after earlier granting a writ, having the litigants travel to this court and participate in oral argument, and expending untold hours internally evaluating the facts and law. Sadly, the following words ring hollow in this instance:

> Performance Standard 1.2 - Developing, Clarifying, and Unifying the Law
> The Supreme Court of Louisiana should clarify, harmonize, and develop the law, and should strive to maintain uniformity in the jurisprudence.

> Performance Standard 2.1 - Quality of the Judicial Process
> The Supreme Court of Louisiana should ensure adequate consideration of each case and make decisions based on legally relevant factors, thereby affording every litigant the full benefit of the judicial process.

> Performance Standard 2.2 - Clarity of Decisions
> Decisions of the Supreme Court of Louisiana should be clear, and full opinions should address the dispositive issue(s), state the holding, and articulate the reasons for the decisions in each case.

> Performance Standard 2.3 - Timeliness
> The Supreme Court of Louisiana should resolve cases expeditiously.

> Performance Standard 4.2 - Case Management, Efficiency, and Productivity
> The Supreme Court of Louisiana should manage its caseload effectively and use available resources efficiently and productively.

La. Sup. Ct. General Administrative Rules, § 10.

I am disappointed in myself for failing to convince the court not to recall the writ because this matter involves those who are among the most vulnerable in society, children who were in need of care because of neglect. My failure in this regard means an opinion will not issue from this court. Because the parties expended their time, effort, and emotion and incurred the expense of bringing their case before this court after they were invited to address the significant issues presented, I feel compelled to share my opinion while realizing this is not the opinion of this court, but merely the opinion of one Justice, dissenting from the recall of the writ, as follows.

In this action between biological and foster parents to alter a child placement judgment, we granted a writ to determine whether the correct legal standard had been applied and to review the correctness *vel non* of maintaining the original child placement judgment. Having reviewed the record and applicable law, I find that neither the district court nor the appellate court applied the correct legal standard, although the court of appeal reached the correct result. The correct legal standard is statutorily dictated by the guardianship provisions of the Children's Code as opposed to the custody provisions of the Civil Code. More specifically, under Article 724 of the Children's Code, challengers to a guardianship judgment bear the burden of proof. The particular burden of Article 724 specifies "clear and convincing evidence" of "a substantial and material change in the circumstances of the guardian or child" inasmuch as "[c]ontinuation of the guardianship is so deleterious to the child as to justify a modification or termination of the relationship or the harm likely to be caused from a change in the guardianship is substantially outweighed by the advantages to the child of the modification." La. Ch.C. art. 724 (D). For the reasons that follow, I find that as challengers, the biological parents failed to carry this

4

burden; therefore, I would hold that the custody awarded to the foster parents as guardians must remain unchanged.

## FACTUAL AND PROCEDURAL BACKGROUND

Summer and Jeremy George are the biological parents of three minor children. Two of the children were born during the Georges' marriage. One child was born prior to the Georges' marriage, which occurred on May 2, 2003.

By all accounts, the Georges have recently made a dramatic and praiseworthy recovery from substance abuse. However, equally undisputed is the fact that the custody of the Georges' children has long been affected by the Georges' substance abuse, and that the Georges' domestic life has not been a model of stability. Indeed, as Summer testified, she and Jeremy had "experimented with pretty much every drug there [was]." During 2006, Summer obtained a temporary restraining order against Jeremy because he got "extra high" and beat her. In 2011, Summer was convicted of domestic battery for hitting her mother-in-law with a baseball bat.

Owing to the turbulence in the Georges' lives, the state removed their three children from the Georges' home in 2010. The state initiated a Child in Need of Care (CINC) case, and the district court adjudicated that the children were indeed in need of care and established a case plan. No suitable relatives were apparently available, so the children were placed in the home of Bryan and Robbie Dugas as foster parents.

In January 2012, the Department of Children and Family Services (DCFS) moved to terminate the Georges' parental rights, asserting that the Georges had failed to comply with a CINC case plan. In May 2012, appearing through counsel, the Dugases filed a pleading alleging that the Georges had consented to granting the Dugases custody, while also conceding that the Georges should retain visitation rights.

The district court issued a judgment on July 10, 2012. The judgment recites that the case "came before this Honorable Court for a review on May 7, 2012 and after considering the evidence and representations of the parties and their respective counsel this court finds that it is in the best interest of the minor children that they be placed in the custody of BRYAN DUGAS and ROBBIE DUGAS." The district court indicated that "the biological parents of the minor children, Jeremy George and Summer George, shall have supervised visits" and ordered that "the Child in Need of Care proceedings are terminated."

In July 2013, the Georges filed a petition in the CINC proceeding, alleging that they were rehabilitated from their drug abuse and had obtained stable housing and employment. The Georges' petition contained a prayer for relief that the Georges be awarded custody. Apparently, because the CINC proceeding had been terminated and the division of the district court which heard the CINC matter had indicated that juvenile jurisdiction had ceased, in July 2013 the Georges filed a second petition as a new case in the district court. The Georges' second petition, which is the basis for the present matter before this court, also contained a prayer for custody of the children. The matter proceeded to a bench trial in the district court.

One of the first analytical steps performed by the district court was ascertaining what kind of custody award had been made in the CINC case. The district court repeatedly observed that the July 2012 judgment "appears to be in the nature of guardianship." At one point, the district court even remarked: "There's just no other way that it fits." However, the district court ultimately rejected guardianship as the type of award because the judgment itself did not–in that court's view–fully satisfy formal requirements of guardianship judgments.

Having determined the July 2012 judgment in the CINC case was a custody judgment, the district court ascribed the burden of proof to the Dugases, who had served as foster parents, to show that transferring custody back to the biological parents would result in substantial harm.  Notably, in ascribing the burden of proof as it did, the district court relied on **Cutts v. Cutts**, 06-33 (La.App. 3 Cir. 5/24/06), 931 So.2d 467.  This court recently overruled **Cutts**, but did so after the district court's ruling.  See **Tracie F. v. Francisco D.**, 15-1812, p. 21 (La. 3/15/16), 188 So.3d 231, 246.  After remarking that it was constrained to place the burden of proof on the Dugases, the district court announced from the bench that "the record is void of any evidence indicating that the biological or the children['s] best interest would not be served by returning to the biological parents."  The district court issued a judgment ordering the children be returned to the biological parents, the Georges.

The Dugases appealed.  The appellate court began its analysis by focusing on the July 2012 CINC judgment.  The appellate court identified two alternatives–either the judgment awarded the Dugases guardianship or custody.  As I will later discuss in my own analysis, guardianship is a relatively recent concept in Louisiana law.  For present purposes, of special note is that guardianship is a form of custody and that guardianship is intended to be permanent.

Focusing on the word "custody," both in the judgment itself and in the Dugases' pleading that preceded the judgment, the appellate court held that the judgment was not a guardianship judgment, but rather a more traditional custody judgment.

The appellate court found that inasmuch as the July 2012 judgment placed the children with non-parents, that placement equated to a finding that the parents were unfit.  The appellate court indicated that under custody law jurisprudence, the

Georges had the burden of proving "a material change in circumstances surrounding the custody of the children and that a change would be in the best interest of the children." **George v. Dugas**, 15-939, pp. 11-12 (La.App. 3 Cir. 3/16/16), 188 So.3d 376, 384.

Having settled on a standard of review and finding that the district court ascribed the burden of proof to the Dugases (who had custody) instead of the Georges (who sought custody), the appellate court turned to the record to render judgment. The appellate court gave this overview of the record:

> The record before this court does not show that the adequate and stable environment in which the children were placed with the Dugases has materially changed. The children's home life with the Dugases is barely addressed at all and, when actually mentioned, is indicative of the care and affection the Dugases show them. There is literally no evidence in the record of a change in the circumstances of the children since the Dugases were awarded custody, let alone that a change in custody would be in the best interests of the children.

**George**, 15-0939 at 12, 188 So.3d at 384.

The appellate court concluded that "the Georges have not met the burden of proof required of them, and the trial court decision granting their petition for custody must be reversed. We hereby render judgment that their petition for custody is denied. Custody of the children is to be returned to the Dugases." ***Id.***

The Georges filed an application in this court for writs. This court granted review. **George v. Dugas**, 16-0710 (La. 5/20/16), 191 So.3d 1060.

## LAW AND DISCUSSION

As the parties have presented this case, both sides agree that much hinges on how the July 2012 judgment is construed. Also, both lower courts recognized that the classification of the July 2012 is a potentially dispositive issue. Both the district court and the appellate court considered the possibility that the Dugases had been

8

awarded custody via guardianship. Both courts rejected guardianship in favor of analogizing the July 2012 judgment to one of custody as it is traditionally understood in the Civil Code context of divorce or illegitimate children. Although I reach a different conclusion than the courts below about the nature of the July 2012 judgment, I agree the focus is properly placed on classifying the July 2012 judgment and I likewise begin there. However, unlike the lower courts, our analysis of the July 2012 judgment is guided by the following long-established principles regarding judgments and how they are to be construed.

"A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled." La. C.C.P. art. 1841. "A judgment that determines the merits in whole or in part is a final judgment." *Id.* "[R]ules of procedure implement the substantive law and are not an end in themselves." La. C.C.P. art. 5051. "Judgments, like other acts, must receive a reasonable interpretation, and whenever a judgment is susceptible of two interpretations, one of which is within the power of the judge, and the other would exceed it, the first must be preferred." **Copley v. Robertson**, 6 La.Ann. 181, 181-82 (La. 1851).

The Georges argue that the judgment cannot be a guardianship judgment because the judgment does not comport with some of the formal requirements for a guardianship judgment. For example, the Georges urge that there are no court findings to explain why guardianship should be awarded. The Georges also contend there was no placement hearing. In support, the Georges direct this court to La. Ch.C. art. 722(C) ("The court shall hold a hearing before approving a guardianship and shall, at the conclusion of the hearing, enter a written order that includes the findings upon which the order is based.").

9

The July 2012 judgment, which arose in the CINC proceeding, recites that the "court finds it is in the best interest of the minor children that they be placed in the custody" of the Dugases. The crux of the Georges' argument, therefore, is not that the judgment lacks best interest findings, but that the judgment lacks *specific* findings. The lack of specific best interest findings in the July 2012 judgment is a formal defect.[3] Because there was never an appeal from the judgment in the CINC proceeding, the judgment is final and inalterable as to any formal defects. See La. C.C.P. art. 1841 ("A judgment that determines the merits in whole or in part is a final judgment."); see also La. C.C.P. art. 2003 ("A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002."[4]) and **Villaume v. Villaume**, 363 So.2d 448, 455-51 (La. 1978) ("As a general rule, a final judgment is not subject to substantive amendment by the trial judge on his motion or motion of any party. In such an event, the proper recourse is a timely application for new trial or a timely appeal.").

Regarding the hearing requirement under La. Ch.C. art. 722 for a guardianship judgment, the Georges' argument must be carefully parsed to be fully understood.

---

[3] The extent or degree to which a court must specify its findings to satisfy La. Ch.C. art. 722(C) is not an issue before this court. However, because guardianship cannot be awarded absent a determination that the placement is found to be in the child's best interest (see La. Ch.C. art. 718), it stands to reason that the findings required under La. Ch.C. art. 722(C) must be some formal explanation by the court of the "best interest" determination made pursuant to La. Ch.C. art. 718(A).

[4] La. C.C.P. art. 2002 provides:

> A. A final judgment shall be annulled if it is rendered:
> (1) Against an incompetent person not represented as required by law.
> (2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
> (3) By a court which does not have jurisdiction over the subject matter of the suit.
> B. Except as otherwise provided in Article 2003, an action to annul a judgment on the grounds listed in this Article may be brought at any time.

The Georges do not contend that there was never a hearing. Rather, the Georges contend that there is nothing *in the record* from the CINC case to show that a hearing occurred prior to rendering the July 2012 judgment. Citing confidentiality concerns for the children, the district court allowed very few contents of the record from the CINC case to be introduced into the record of the instant case, and there are not, for example, any minute entries which would typically be one type of documentation evidencing that a hearing had been held.[5]

On one hand, it might be said that in complaining of a lack of evidence of a hearing, the Georges complain again of a defect in the form, rather than in the substance, of the CINC proceedings. If so viewed, the time for leveraging such a defect has passed. See La. C.C.P. arts. 1841 and 2003.

On the other hand, however, we need not decide whether the Georges have raised a formal or substantive challenge in this instance. A longstanding principle directs that a "judgment should be so construed as to give effect to every word and part there of and the effects and consequences which follow from its terms, whether expressed or implied." **Seal v. Crescent City Cold Storage, Inc.**, 96-880l, 96-881, p. 6 (La.App. 5 Cir. 3/12/97), 690 So.2d 1005, 1008 (citing **In re Clover Ridge Planting & Manufacturing Co.**, 193 So. 468, 473 (La. 1939)). Here, the judgment recites that it was rendered after the "matter came before this Honorable Court for a review on May 7, 2012 and after considering the evidence and representations of the parties and their respective counsel." While every word of the quoted language from the July 2012 judgment in the CINC proceeding is a hallmark of having conducted a hearing, two aspects are especially noteworthy. First, and recalling that the

---

[5] Whether the district court appropriately demarcated what materials from the CINC case should be included in the present record is not an issue before this court, and I express no opinion on the issue.

judgment was rendered in a CINC case, the recitation that the "matter came … for review" fits squarely within the procedure described by La. Ch.C. art. 692 (indicating that "[a] review hearing shall be conducted" in a CINC case within various timeframes described further in the article). Second, the recitation that the court "consider[ed] the evidence" fits squarely within La. Ch.C. art. 699 (describing evidentiary procedures for CINC review hearings, the article indicates in pertinent part that "[t]he court … shall consider all relevant evidence offered by the parties."). Given these explicit indicia of a CINC review hearing cited in the July 2012 judgment, the Georges' invitation to ignore those recitations in the judgment should be declined.

Earlier, I noted that the Georges were precluded from altering the July 2012 CINC judgment to correct any formal defects. I return to further analyze their argument, however, because I do not mean to imply that form or formality are unimportant. Indeed, had the district court been more thorough in hewing to formality, much of this litigation could have been avoided. The fact that the July 2012 CINC judgment is final simply means that any formal defects cannot now be changed.[6] The fact that a judgment cannot be changed does not, however, foreclose the more difficult issue here. The form, defects and all, may still be considered when construing a judgment. Cf. Cmt. (A) to La. C.C.P. art. 1918 ("In Louisiana the form and wording of judgments is not sacramental.").

The Georges have repeatedly, and correctly, noted in the course of this litigation that the July 2012 judgment lacks specific best interest findings. See La. Ch.C. art. 722. However, the lack of best interest findings does not, itself, preclude

---

[6] Some formal defects, not argued here, can subject a judgment to collateral attack. See La. C.C.P. art. 2002 (enumerating certain defects such as lack of personal jurisdiction and service of process as defects for which a judgment must be annulled).

12

the judgment from being a guardianship judgment. If that were the case, standing alone, the judgment could not be a custody judgment, which is how the Georges urge it should be construed. Under La. Ch.C. art. 683(B), when awarding custody in a CINC case, "[t]he court shall place the child in the custody of a relative unless the court has made a specific finding that such placement is not in the best interest of the child. The court shall give specific written reasons for its findings, which shall be made a part of the record of the proceeding." Neither the judgment itself, nor the provisions of the CINC record provided to this court, recite specific findings.

Stated simply, the lack of best interest findings no more excludes this judgment from being a guardianship judgment than it excludes the judgment from being a custody judgment. Despite the Georges' emphasis on formal requirements, in the end, substantive considerations predominate and direct how the July 2012 judgment must be construed.

Substantively, there are two aspects of the July 2012 judgment which have not received attention by the lower courts, but which the Dugases correctly urge are indicative of the court's intent to institute guardianship rather than traditional custody. These aspects are permanent placement of the children and finality of the CINC proceeding. Under the Children's Code, permanent placement and CINC finality squarely point to guardianship.

As I noted earlier, the judgment recites it was precipitated by a case review: "This matter came before this Honorable Court for a review … ." (July 2012 Judgment, para. 1). Pursuant to La. Ch.C. art. 692, "[c]ase reviews shall continue to be held at least once every six months [after the initial review] **until the child is permanently placed**." (Emphasis added.)

13

Because the July 2012 judgment not only designates custody to the Dugases, but also simultaneously purports to bring the CINC case to an end ("the Child in Need of Care proceedings are terminated"), the court clearly intended the placement of the children to be permanent. Dispelling any doubt that the court intended the placement of the children to be permanent, within the July 2012 judgment, there are at least three other indicators of finality and permanent placement of the children: 1) there is a finding "that the Child in Need of Care proceedings [are] no longer necessary"; 2) the Department of Children and Family Services "is released from supervision" over the minor children; and 3) superior custody rights are designated to the Dugases and inferior rights of visitation only are designated to the Georges. See La. C.C.P. art. 1841; see also, e.g., **Conley v. Plantation Management Co., L.L.C.**, 12-1510, p. 7 (La.App. 1 Cir. 5/6/13), 117 So.3d 542, 547 ("Generally, it [a final judgment] must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied.").

According to La. Ch.C. art. 687, a "permanent placement [is] defined in Article 603." Turning then to La. Ch.C. art. 603, I see there are three options for "permanent placement," and traditional custody to a non-parent is not an option, but guardianship is an option:

> (22) "Permanent placement" means:
>     (a) Return of the legal custody of a child to his parent(s).
>     (b) Placement of the child with adoptive parents pursuant to a
> final decree of adoption.
>     **(c) Placement of the child with a legal guardian.**

La. Ch.C. art. 603. (Emphasis added.)

Because awarding traditional custody to the Dugases was not a permanent placement option for concluding the CINC proceeding, but awarding guardianship was an option authorized by law, I am compelled to find that the July 2012 judgment

awarded guardianship to the Dugases.  See **Sharp v. Zeller**, 38 So. 449, 450 (La.

1905) ("[T]he whole context of the judgment should be considered, and in case of

doubt preference should be given to that construction which is more consonant with

a proper decree on the facts and law of the case."); see also **Copley**, 6 La.Ann.

181-82.

Guardianship is a relatively recent concept in Louisiana law.  Of special note

is that guardianship is a form of custody,[7] and guardianship is intended to be

permanent.  In 2011, the following explanation of guardianship was provided by the

legislature:

> A. The purpose of guardianship is to provide a permanent placement for children when neither reunification with a parent nor adoption has been found to be in their best interest;  to encourage stability and permanence in the lives of children who have been adjudicated to be in need of care and have been removed from the custody of their parent;  and to increase the opportunities for the prompt permanent placement of children, especially with relatives, without ongoing supervision by the department.
>
> B. This Chapter is intended to ensure that the fundamental needs of children are met and the constitutional rights of all parties are recognized and enforced.

La. Ch.C. art. 718 (added by 2011 La. Acts 128, § 1).

Consistent with the intent for guardianship to be permanent, the legislature has

provided explicit limitations on when guardianship may be changed:

> A guardianship order may be modified or terminated if the court finds by clear and convincing evidence that there has been a substantial and material change in the circumstances of the guardian or child because of any of the following:
>
> (1) The guardian no longer wishes to serve or can no longer serve as guardian of the child.
>
> (2) Continuation of the guardianship is so deleterious to the child as to justify a modification or termination of the relationship or the harm likely to be caused from a change in the guardianship is substantially outweighed by the advantages to the child of the modification.

---

[7] In pertinent part, La. Ch.C. art. 719 indicates: "Unless the court specifies otherwise, a guardian shall exercise the rights and responsibilities of legal custody … ."

La. Ch.C. art. 724(D).

Because the Georges' lawsuit seeks to change a guardianship awarded to the Dugases in the July 2012 judgment, the criteria of La. Ch.C. art. 724(D) govern. To show a material change in circumstances, the Georges emphasize their recent rehabilitation from drug abuse and their establishment of steady employment. The Georges point out that this court has recently ruled that a previously absentee father "had been rehabilitated as a parent," and such rehabilitation satisfied the father's "burden of proving a material change in circumstances had occurred." **Tracie F.**, 15-1812 at 29, 188 So.3d at 250.

The Georges' reliance on our ruling in **Tracie F.** is misplaced. In **Tracie F.**, the court was presented with a dispute between two parties with shared custody. *Id.* After further observing that the shared custody arrangement arose from a consent decree, this court determined that the biological father had the burden of showing a material change in his own circumstances. *Id.* Here, the custody regime was one of guardianship. As is typical for guardianships, the guardians were awarded custody, and the biological parents were relegated to visitation rights.[8] The July 2012 judgment in the CINC proceeding, unlike the judgment in **Tracie F.**, did not establish joint custody.

Under La. Ch.C. art. 724(D), the legislature has established that challengers to a guardianship arrangement must prove "a substantial and material change in the circumstances of the guardian or child." Thus, and in contrast to the situation in **Tracie F.**, the test for a material change in circumstances pursuant to La. Ch.C. art.

---

[8] See, e.g., Josh Gupta-Kagan, *The New Permanency*, 19 U.C. Davis J. Juv. L. & Pol'y 1, 13 (2015) ("Guardianship grants legal custody to a non-parent–typically, the foster parent or other custodian who has raised the child for some period of time–without terminating the legal relationship between parent and child. The parent typically retains a right to visit with the child … .").

724(D) is primarily focused, not on the circumstances of the challenger, but on the circumstances of the guardian(s) or the child. See Cmt. (C) to La. Ch.C. art. 724 ("Paragraph D reflects the policy that the most important feature of a guardianship was its permanence during the child's minority; therefore, the standard for modification or termination ought to be quite stringent ... . Thus, the material change must occur in the circumstances of the guardian or child."). Moreover, "[i]mprovement of a parent's capabilities, for example, would not satisfy the threshold requirement that some deterioration in the quality of the guardian's care must be demonstrated." *Id.*

This is not to say the Georges' commendable drug rehabilitation and steady employment are irrelevant. Under La. Ch.C. art. 724(D), aside from the situation in which a "guardian no longer wishes to serve or can no longer serve as guardian," which is described in La. Ch.C. art. 724(D)(1), but is a situation not presented here, a "substantial and material change in the circumstances of the …child" can be proven in either of two ways. Specifically, a challenger can show either that "[c]ontinuation of the guardianship is so deleterious to the child as to justify a modification or termination of the relationship or the harm likely to be caused from a change in the guardianship is substantially outweighed by the advantages to the child of the modification." La. Ch.C. art. 724(D)(2).

Under the last phrase quoted, it seems the Georges' drug rehabilitation and steady employment would constitute an "advantage" to the children. Certainly, when the children visit with the Georges, the improvements in the Georges' situation are an advantage. However, in terms of weighing this advantage against the "harm likely to be caused from a change in guardianship" as required by La. Ch.C. art. 724(D)(2), any advantage from the Georges' drug rehabilitation and steady employment fails to

tip the scales in their favor. To reiterate, without detracting from the Georges' self-improvements, theirs was the burden to show that the advantages from their self-improvements "substantially" outweighed the presumed harm from changing the guardianship previously awarded to the Dugases. See La. Ch.C. art. 724(D)(2).

In a *de novo* review of the record,[9] I find the Georges have failed to meet either standard in La. Ch.C. art. 724(D)(2) with "clear and convincing evidence" as required by La. Ch.C. art. 724(D). There is no evidence that the Dugases' guardianship has been anything other than greatly beneficial to the children. By all accounts, the Dugases have provided the children what appears to be an enriching private education and home environment. The Georges have simply failed to provide evidence from which we could discern that any advantage to the children gained from the Georges' self-improvements substantially outweighs the harm that would likely result from removing the children from the Dugases' guardianship.

I also observe from the record that the children's circumstances leading to their removal from the Georges' home and placement with the Dugases were dire. Drug abuse and domestic violence were pervasive features of the Georges' lives. In contrast, the Dugases have consistently invested time, energy, and resources to establish a stable, healthy environment for the children. For instance, Mrs. Dugas is a nurse by training, and has sacrificed her career, which included serving as a college instructor, to care for the children. Mr. and Mrs. Dugas have been involved in the children's education from an early age, and have imparted formative reading skills.

---

[9]  See, e.g., **Evans v. Lungrin**, 97-0541, 97-0577, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735 (explaining, in a child custody case, that "where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence.").

Under the Dugases' care, the children have earned good grades at school and engaged in sports and other activities.

On these facts, leaving the guardianship to the Dugases undisturbed is consistent with these observations I made about the benefits of stability in child custody: "The child has at stake an interest of transcending value in a custody modification suit–his best interest and welfare–which may be irreparably damaged not only by a mistaken change in custody but also by the effects of an attempted or threatened change of custody on grounds that are less than imperative." **Bergeron v. Bergeron**, 492 So.2d 1193, 1200 (La. 1986). Although we made those observations about the benefits of stability when we formulated a test for resolving a custody dispute between divorced parents, those observations apply here, inasmuch as the legislature has adopted our test from **Bergeron** as the standard for altering a guardianship judgment. See Cmt. (C) to La. Ch.C. art. 724 ("The Louisiana custody modification standard announced in **Bergeron v. Bergeron**, 492 So.2d 1193 (La. 1986) is used here in Subparagraph D(2).").

As a final detail, I note that the appellate court ordered a remand on the issue of visitation to be accorded to the Georges, as follows:

> The record before this court does not allow us to determine the amount of visitation, if any, supervised or not, should be granted to the Georges. Therefore, we remand this matter to the trial court below in order to determine what level of visitation with the Georges would be in the best interests of the children.

**George**, 15-939 at 12-13, 188 So.3d at 384.

Because the Georges' writ application did not assign error to the visitation remand, and the Dugases have not sought a writ challenging the ruling of the appellate court, I would leave that aspect of the appellate court's decision undisturbed. See, e.g., **Boudreaux v. State, DOTD**, 01-1329, p. 5 (La.2/26/02), 815

So.2d 7, 11 (declining to reach questions briefed for oral argument, but which were not contained in the original writ application, this court explained such questions were not properly before the court).

## CONCLUSION

While certain formalities are lacking, viewing the July 2012 judgment in the CINC proceeding as a guardianship judgment substantively comports with the permanent child placement requirements for concluding the CINC proceeding. In contrast, viewing the July 2012 judgment as a more traditional custody decree does not substantively comport with the CINC requirements of the Children's Code. Under longstanding principles, this court is constrained to look past the formal defects to the substance of the July 2012 judgment and, in doing so, I find the July 2012 judgment is a guardianship judgment.

Guardianship is a custody regime that has been relatively recently introduced in Louisiana law. Guardianship is intended to be a permanent custody regime. Guardianship is not immutable, as the legislature established in La. Ch.C. art. 724(D) a test for changing it. However, by showing only their self-improvement after the guardianship was awarded, the challengers have not met the rigors of that test.

When construing the July 2012 child placement judgment, the lower courts erred in elevating form over substance. In substance, I find the child placement judgment to be an award of guardianship. The Georges, who sought to have the child placement altered, failed to carry their burden of proof under La. Ch.C.art. 724(D). Accordingly, I would affirm the conclusion of the court of appeal, which declined to alter the child placement judgment although applying a different legal standard. I would remand this matter to the district court for consideration of the visitation issue identified by the court of appeal.

# SUPREME COURT OF LOUISIANA

## NO. 2016-CJ-0710

## JEREMY GEORGE, ET UX.

## VERSUS

## ROBBIE DUGAS, ET UX.

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*THIRD CIRCUIT, PARISH OF ACADIA*

**CLARK, J.**, dissenting.

I respectfully dissent from the majority's decision to recall the writ. Having granted the writ, I would resolve this case on the merits based on the issues and the record before this court.

# SUPREME COURT OF LOUISIANA

## 2016-CJ-710

## JEREMY GEORGE, ET UX.

## VS.

## ROBBIE DUGAS, ET UX.

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, THIRD CIRCUIT, PARISH OF ACADIA

**Hughes, J., concurs.**

I reluctantly concur with the withdrawal of the writ in this matter. Regardless of the burden of proof to be applied to these unusual facts, the trial court is in the best position to determine the best interests of the children.

**SUPREME COURT OF LOUISIANA**

**NO. 2016-CJ-0710**

**JEREMY GEORGE, ET UX.**

**VERSUS**

**ROBBIE DUGAS, ET UX.**

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*THIRD CIRCUIT, PARISH OF ACADIA*

**Crichton, J., dissents for the reasons assigned by Justice Weimer.**