LILJEBERG, J. hln this case involving guardianship and custody, the minor child’s great aunt seeks review of the trial court’s judgment terminating her guardianship of the child and awarding her and the child’s mother joint custody, with the mother designated as the domiciliary custodian. For the following reasons, we reverse the. trial court’s judgment, reinstate the guardianship order, and remand to the trial court to set a schedule of visitation for the mother. FACTS AND PROCEDURAL HISTORY On November 16, 2011, the minor child, L.L.M., was born. The child’s biological mother is Kodie Servat (“Kodie”), and his biological father is Lane Mouney, Sr. (“Lane”). Lisa Mouney (“Lisa”) is Lane’s aunt and the great aunt of L.L.M. When L.L.M. was born, Kodie was 18 years old and Lane was 19 years old, and they needed assistance caring for L.L.M. During the first year of his life, L.L.M. lived on an alternating weekly basis at Lisa’s home and Kodie’s mother’s home. According to the testimony at trial, Ko-die and Lane used drugs, including synthetic marijuana, on a regular basis after L.L.M. was born. According to Lisa, she asked Kodie and Lane to leave her house because she believed they were stealing from her, so they left the baby with Lisa and moved to Mississippi. Kodie’s mother, Denise Roques (“Denise”), and Lisa continued to care for L.L.M. on an alternating weekly basis. According to Denise, after approximately nine months, she brought L.L.M. to Kodie in Mississippi. On or about February 19, 2013, Lane and Kodie were arrested and the Mississippi Department of Human Services (“DHS”) took custody of L.L.M., after LLane and Kodie were found with drugs during a surprise home visit by a DHS case worker. L.L.M. was placed in foster care.[1] On March 20, 2013, Lisa filed a Petition for Appointment of Guardian in the Chan-eery Court of Jackson County, Mississippi, and she included “Consent to Guardianship” documents signed by Kodie and Lane with her filing. That same date, Lisa was granted guardianship of L.M.M. via a Decree Appointing Guardian. On March 30, 2015, Kodie filed a Petition to. Make Foreign Judgment Executory ih the 24th Judicial District Court, seeking to have the Decree Appointing Guardian made executory in Jefferson Parish. In her petition, Kodie stated that L.L.M. has continued to reside in Jefferson Parish with Lisa since the guardianship order was signed on- March 20, 2013,' and thus, Louisiana is the child’s “home state.” On March 31, 2015, the trial judge signed an Order declaring that the Decree Appointing Guardian “is hereby made the Judgment of this Court.” On August 24, 2015, Kodie filed a Petition to Modify Custody and to Terminate Guardianship of Minor. In her petition, Kodie asserted that circumstances have changed since the guardian was appointed which warrant a change in custody of the minor child, returning him to his mother. Kodie asserted that it was in L.L.M.’s best interest for the guardianship to be terminated and for her to be awarded custody, because: 1) she has remained drug free for over a year; 2) she has steady employment; 3) she is now married and living in á stable environment; 4) she is no longer in contact with the child’s father, Lane, who remains incarcerated; 5) Lisa has refused to foster a good relationship between Kodie and L.L.M., and has restricted K6-die’s contact with L.L.M.; 6) she has a stable lifestyle and is well capable of parenting her child and providing a wholesome environment for him; and 7) any harm likely to be caused from a | .¡change in the guardianship is substantially outweighed by the advantages to the child of the modification sought. On December 9, 2015, the trial court appointed Dr. Karen Van Beyer as a mental health expert to perform a custody evaluation. After Dr. Van Beyer completed the evaluation and her report, recommending joint custody, for Kodie and Lisa with Kodie designated as the domiciliary custodian, her recommendations were made an interim judgment of the court, Lisa and Kodie objected to the interim order and requested a de novo hearing by the trial judge. At Lisa’s request, a second custody evaluator, Dr. James Klein, was appointed to perform a custody evaluation.. Kodie filed a First Supplemental and Amending Petition to Modify Custody and to Terminate Guardianship, seeking an order vacating and annulling the order of guardianship for fraud and ill practices, pursuant to La. C.C.P. art. 2004. Trial in this matter was held on October 5, 2016, October 20,2016, and November 7, 2016. At trial,-Lisa Mouney testified that she was 48 years old, divorced, and had no children. She stated that she has known Kodie since she was about 13 years old and that Kodie was regarded as a family member. After L.L.M. was born, Kodie, Lane, and L.L.M. stayed at Lisa’s house week-to-week, but she had to ask them to leave due to theft. Kodie and Lane moved to Mississippi and initially left L.L.M. with her and Denise. After Denise took L.L.M. to Kodie in Mississippi, Kodie and Lane were arrested and L.L.M. was put ini foster care. At some point, his foster parents could not take care of him because he was sick, so Lisa contacted a Mississippi attorney and had guardianship papers prepared. Kodie and Lane each signed a document consenting to the guardianship. Lisa stated that she decided to seek guardianship, because she was told that L.L.M. was “retarded” and-needed medical attention, and no one else would take him. She was awarded guardianship in March of 2013. 14When Lisa' obtained guardianship of L.L.M., he had several problems, including not being able to walk, only being able to “army crawl,” and recurring ear infections. On the advice of his doctor, Lisa arranged for L.L.M. to get tubes in his ears and to have his adenoids removed. She. also reestablished L.L,M.’s therapy and was advised by a-physical therapist to take him to see Dr. Aaron Karlin, a pediatrician who specializes in physical medicine and rehabilitation. Lisa testified that Dr. Karlin diagnosed L.L.M. with right side cerebral palsy and developmental delay. Dr. Karlin informéd her that cerebral palsy is a lifelong condition requiring ongoing therapy and treatment. Lisa denied ever telling Kodie that she had to sign the guardianship papers or she would not see her child again.' It was Lisa’s understanding that guardianship meant that she- would take L.L.M., protect him, and do everything she could to make him better and. try to get him back to a normal life. Lisa testified that there was never a time that she told Kodie she could not visit with L.L.M. She admitted she told'Kodie’s family that L.L.M. could not spend the night, with them if Kodie was,present, because she took her role as guardian very seriously and she believed it would be her fault if anything happened to. him. Lisa testified that she did not allow Kodie unsupervised visitation, because she was concerned that Kodie ■ could potentially put L.L.M. at risk. Lisa testified that Kodie initially visited with L.L.M. once a week and later increased to two times per week, until Dr. Van Beyer’s recommendations were made an interim judgment of the court. Lisa stated that she did not have a problem allowing Kodie. to visit with L.L.M., but Kodie was “in and out of his life” and she sometimes did not hear much from Kodie. She testified that there were times when L.L.M. would visit with Kodie’s family and Kodie did not go to see him. Lisa testified that L.L.M.’s right side is “tremendously” weaker than his left, so he tends to hold up his right arm. She stated that he walks with a limp and his I .-.foot drags,, so ⅛: wears a “boot” to try to correct the problem. Lisa testified that she has told Kodie several times that-Dr, Karlin diagnosed L.L.M. with hemiparesis, or cerebral palsy, but Kodie does not believe that L.L.M. has cerebral palsy or any disability. According to Lisa, L.L.M.’s cerebral palsy has to be controlled with ongoing therapy and treatments, .and she believes he will be able, to have a stable life as a grown man if he receives the treatment he needs. Lisa has consistently taken L.L.M. to physical therapy, and medical and dental appointments. She admitted that she informed his doctors that Kodie may have been on drugs when L.L.M, was born, because it was a possibility and they needed to know all of the facts. Lisa has enrolled ' L.L.M. in gymnastics to help with his physical limitations, and she stated that Kodie has done nothing to assist her in helping L.L.M- with his disability. She stated that L.L.M. calls her home his home, and .she is more than willing to continue helping with his medical needs. She has always been in his life and, even before she was granted guardianship, Lisa helped to care for him and financially support him. In Lisa’s,view, Kodie should not have L.L.M. back in her care, because she “doesn’t finish things” and she does not believe Kodie will be persistent in keeping up with his medical care. Kodie Servat testified that L.L.M. was a happy and healthy baby when he came home from the hospital. She .admitted that she smoked cigarettes when she was pregnant, but she did not use drugs. When he came home, L.L.M. spent alternating weeks at her mother’s house and Lisa’s house. He began therapy with a program called Early Steps,.but Kodie terminated the services in July of 2012 because he was “caught up” and “doing all that he should.” Kodie admitted that L.L.M. was placed in state custody when drugs were found in their home, but she stated that L.L.M. was healthy, not abused or neglected, and did not have any special needs of which she was aware, | (¡Kodie testified that after L.L.M. was taken into state cústody and until she moved back to Louisiana in March 2013, she had meetings with Child Services, submitted to drug tests, and complied with her “case plan.” She was never informed by the state'of Mississippi that her parental rights were about to be terminated. Kodie admitted that she signed a “Consent to Guardianship” document, but she stated that nothing was read to her and she was just told where to sign. It was her understanding that if she signed this document, she would be able to see L.L.M. whenever she wanted. She believed that she would be involved- in any medical attention or decision making, and that the guardianship was just a temporary situation until she and Lane could get stable employment and stay off drugs. She agreed that the guardianship papers do not indicate that she was granted visitation with L.L.M. Kodie acknowledged that if Lisa had hot been granted guardianship, L.L.M. would have remained in state custody until she and/or Lane complied with Mississippi’s requirements to get him back. Kodie stated that after Lisa was granted guardianship of L.L.M., she was only allowed to see him four or five times from March 2013 through December 2013, though she asked to see him -more often. She testified that she began having visitation with L.L.M. for two hours every Monday starting in January of 2014. Kodie testified that she is aware that L.L.M; has some medical difficulties, but she does not believe he has cerebral palsy. She stated that he has some stiffness in the muscles of his right leg, but she claims the physical therapists were told that L.L.M.’s right side was weak so they gave him therapy to strengthen his right side, which caused his muscles to tighten. She admitted he has a lisp and she cannot always understand his speech, but she does not believe that this is a problem for a child who gets excited when he talks. Kodie admitted that Dr. Karlin’s records reflect a diagnosis of spastic hemiparetic cerebral palsy, but she thinks the diagnosis was based on the history and information provided by Lisa. 17Kodie also admits ted that one of L.L.M.’s foster parents in Mississippi was concerned that he was not able to do things he should have been able to do at his age. •Kodie testified that she was admitted to River Oaks Hospital for depression several months after L.L.M., was. born. She stated that although the medical records indicate she was suicidal and/or homicidal, that she smoked marijuana while pregnant, and that she would burn and cut herself, those records are false. She believes the medical personnel at River Oaks made them up. She further stated that several other notations in her medical records were not true. Kodie admitted that she believes Lisa’s care of L.L.M. benefitted him at the time that she and Lane were not in a position to' provide what was best for him However, she testified that since that time, she has remained drug-free, found employment and a good home, and. now. has a good family and support team. Kodie stated that if she were to. be granted custody, she would still want Lisa to be in L.L.M.’s life, because she has been very important in his life thus far. Denise Roques, Kodie’s mother, testified that Kodie started getting into trouble and doing drugs when she was about 14 years old and got involved with Lane. Kodie moved out of Denise’s home and got an apartment with Lane when she was 17. According to Denise, Kodie smoked cigarettes while she was pregnant but did not use drugs. After L.L.M. was born, Kodie moved back in with Denise, and Lane moved in with Lisa. Denise testified that L.L.M. alternated weeks between her home and Lisa’s home, and Kodie would stay with L.L.M. when he was at Lisa’s as well. Denise stated that Kodie was always with the baby until they started “messing up” and “getting high with the synthetic drugs.” She stated that she and Lisa continued to care for L.L.M. while Kodie and Lane were “out doing their thing.” Denise testified that when Lane and Kodie went to live in Mississippi, she and Lisa continued to alternate weeks caring for L.L.M. | sAfter approximately nine months, Denise brought L.L.M. to Kodie in Mississippi. Denise testified that after Mississippi took custody of L.L.M. and Lisa became his guardian, Kodie moved in with Denise. According to Denise, Kodie still smoked marijuana after Lisa became L.L.M.’s guardian, but she stated Kodie has now been “clean” for two and a half to three years. Denise stated that Lisa did not allow Kodie to visit with L.L.M. for “maybe a year,” and then Lisa allowed Kodie to see him if Denise or Denise’s mother was present. On cross-examination, Denise admitted that after L.L.M. was born, Kodie and Lane could not take care of him without help. She also admitted that Kodie, who was 23 at the time of trial, has lived'in at least 12 different places since she was 17. Denise testified that she brought Kodie to River Oaks Hospital in May 2012 for depression. She stated that when Lane picked up Kodie from River Oaks, they “went and got high,” and they continued to use drugs. When asked if L.L.M. has cerebral palsy, Denise replied, “[n]ot to my knowledge, no.” She acknowledged that L.L.M. has issues when he walks, including a limp, he has a brace to help straighten out his right foot, and he also has issues with his right arm, Benjamin Servat (“Ben”), Kodie’s husband, testified that he knew Kodie in high school and they started hanging out again when L.L.M. was about 18 months old. Ben stated that he has a very close relationship with L.L.M., and that Kodie and L.L.M. have a very strong relationship. He testified that L.L.M. wears a brace because he has a “duck walk,” but he is not aware of any special needs or physical difficulties. He stated that L.L.M. also has a “little stutter” and a “little lisp,” but he is able to talk' and communicate appropriately for his age. Ben was not aware that L.L.M. has been diagnosed with spastic hemiparetic cerebral palsy. He stated that he would love for L.L.M. to live with him and Kodie, and that they can provide a stable environment for him., laBen admitted that he had previously been arrested for simple burglary, but the charges were reduced to loitering. He has also been arrested for driving while intoxicated, first offense, and resisting arrest. Ben testified that he has never used drugs or smoked marijuana, and he has never seen Kodie use drugs. Kodie has told him that she used drugs in the past, including smoking marijuana and a synthetic marijuana known as “spice.” Lane Mouney, Sr. testified that L.L.M. was taken into state custody in Mississippi because he and Kodie had drugs in-the house when L.L.M. was present. He stated that Lisa came to have custody of L.L.M. because “we wanted her to” and “[n]obody else would.” When he agreed for -Lisa to have guardianship, he understood that he was giving up his rights to L.L.M. until he was 18. Lane stated that he consented to the guardianship because he could not care for L.L.M. at that time and it was in L.L.M.’s best interest for Lisa to be his guardian. No one forced or threatened him into signing the consent form. Lane further testified that he understands L.L.M. has disabilities and needs help. Lane stated that it is a “known fact” that L.L.M. has cerebral palsy. He testified that Lisa has done “everything” for L.L.M.’s medical conditions, including having tubes put in his ears and taking him to occupational therapy, speech therapy, and physical therapy. He believes L.L.M.’s condition has gotten better over time because of the treatment Lisa obtained for him. Lane admitted that he does not have any concerns about Kodie’s capability to care for L.L.M. Dr. Van Beyer was accepted as an expert in child custody evaluations. She testified that when Lisa returned to Louisiana with L.L.M., it took Kodie a “couple of months to get clean,” and then she never . used drugs again. Dr. Van Beyer did not know of any reason why Kodie should not have been allowed to see L.L.M. She opined that Kodie appears to have very adequate parenting skills and an | ^appropriate attitude toward how to set consequences for L.L.M. Dr. Van Beyer did not have any reservations about L.L.M. transitioning into Kodie’s home.[2] Dr. Van Beyer also testified that Kodie discussed the signing of the guardianship papers with her. Kodie told her that she was told to sign the consent to guardianship document or she would have to give up her child forever. Kodie informed Dr. Van Beyer that it was her understanding that the guardianship would be temporary and that she would have visitation with l.l.m; Dr. Van Beyer testified that she met with Lisa during the evaluation process, and she did not feel that Lisa overstated L.L.M.’s needs. She noted that L.L.M. was born premature[3] and that Lisa was very determined and avid in her pursuit of all the medical attention he needed. She stated that Lisa took L.L.M. to physical therapy, speech therapy, a neurologist, and other doctors, and did a “very good job” at getting him the medical attention he needed. According to Dr. Van Beyer, by the time she saw L.L.M., he was no longer really “behind.” It was Dr. Van Beyer’s understanding that Kodie was not notified and did not attend any. medical or therapy appointments. Dr. Van Beyer believes that Lisa should have made every effort to include Kodie in- L.L.M.’s everyday life, medical treatment, and psychotherapy. She recommended that Kodie and Lisa share joint custody for a year and then Kodie should have sole custody.[4] Dr. Alan Klein, an expert in custody evaluations, testified that he performed a custody evaluation in this matter and -reviewed medical records and other documents, When Dr. Klein met with L.L.M., he did not appear to be significantly disabled, from a lay perspective, though he appeared to have a mild preference for one side and his language was not very clear. He testified that Kodie admitted her Inhistory of substance abuse, but it was his impression that she has turned her life around significantly. He did not see any negative markers regarding her ability to parent. During the course of his evaluation, Dr. Klein did not see any indication that Kodie had emotional or mental- health issues or significant depression. Dr. Klein recommended. that Kodie. and Lisa be granted joint, custody, with Kodie as the domiciliary parent,- as noted in his evaluation,. On December 8, 2016, the trial judge rendered a judgment terminating the guardianship of L.L.M. and awarding joint, custody to Kodie- and Lisa, with Kodie designated as the-domiciliary custodian. In her judgment, the trial judge set forth a visitation schedule, appointed a parenting coordinator, and set forth requirements for Kodie and Lisa to share educational, medical, and other information pertaining to L.L.M. Lisa appeals the trial court’s judgment. LAW AND DISCUSSION Guardianship is a form of custody in Louisiana.[5] La. Ch.C. art. 719. The best interest of the child is the principal consideration in all child custody determinations. Tracie F. v. Francisco D., 15-1812 (La. 3/15/16), 188 So.3d 231, 239; Ferrand v. Ferrand, 16-7 (La. App. 5 Cir. 8/31/16), 221 So.3d 909, 938. In Louisiana, the purpose of guardianship is to provide a permanent placement for children when neither reunification with a parent nor adoption has been found to be in their best interest. La. Ch.C. art. 718(A). Although guardianship is intended to be permanent, there are circumstances under which guardianship may be modified or terminated under Louisiana law, as set forth in La. Ch.C. art. 724.[6] Specifically, La. Ch.C, art. 724(D) provides as follows: A guardianship order may be modified or terminated if the court finds by clear and convincing evidence that there has 112been a substantial and material change in the circumstances of the guardian or child because of any of the following: 1) The guardian no longer wishes to serve or can no longer serve as guardian of the child. 2) Continuation of the guardianship is . - so deleterious to- the child as to jus- , tify a modification or termination of the relationship or the harm likely to be caused from a change in the guardianship is substantially outweighed'by the advantages to the child of the modification. In her first assignment of error on appeal, Lisa argues that the trial court erred in terminating her guardianship of L.L.M. and granting domiciliary custody to Kodie. She argues that Kodie did not meet the “heightened” requirements to terminate the guardianship pursuant to La. - Ch.C. art. 724(D), because she did not prove by clear and convincing evidence that a substantial and material change in the circumstances of the guardian or child existed. Further, she contends that Kodie did not prove that continuation of the guardianship was so deleterious to L.L.M. as to justify modification or termination of the guardianship, or that the harm likely to be caused from a change in the guardianship was substantially outweighed by the advantages to the child of the modification. Lisa argues that Kodie’s personal improvements and rehabilitation from drug use are insufficient to satisfy the requirements .of La. Ch.C. art. 724(D). . Kodie responds that the guardianship order did not comply with the law and that it should also be annulled due to fraud or ill practices. Kodie further argues that even if the guardianship order was properly obtained, the requirements of La. Ch.C. art 724(D) for termination or modification of guardianship have been met. Specifically, she claims that the continuation of a guardianship which denied her any significant contact with her son and denied her the right to have any input into medical or educational decisions is so deleterious to L.L.M. as to justify a modification or termination. She further contends that the harm likely to be caused |1Rby a change in the guardianship is substantially outweighed by the advantages to L.L.M. of being raised by his mother. The Fourteenth Amendment to the United States Constitution protects a biological parent’s due process right to “the companionship, care, custody, and management” of a child. Tracie F., 188 So.3d at 242; In re Adoption of B.G.S., 556 So.2d 545, 549 (La. 1990). Custody proceedings “involving a parent and non-parent present the confluence of two powerful and basic principles: the child’s substantive right to live in a custodial arrangement which will serve his or her best interest and a parent’s constitutional right to parent his or her biological child.” Ferrand, 221 So.3d at 918-919. The guardianship articles in the Louisiana Children’s Code are intended to ensure that the fundamental needs of children are met and the constitutional rights of all parties are recognized and enforced. La. Ch.C. art. 718(B).- La. Ch.C. art. 724(D) provides that an order of guardianship may be modified or terminated if the court finds by clear and convincing evidence that there has been a substantial and material change in the circumstances of the guardian or the child. This article sets forth three situations under which a material change in circumstances may be found: 1) the guardian no longer wishes to serve or may no longer serve as guardian; 2) the continuation of the guardianship is so deleterious to the child as to; justify a modification or termination of the relationship; or 3) the harm likely to be caused from a change in the guardianship is substantially outweighed by the advantages to the child of the modification. In the present case, there has been no material change in the circumstances of Lisa or L.L.M. Rather, the only material change has been, in Kodie’s circumstances. Clearly, the first two situations for finding a material change in the circumstances of the child or guardian have not been met, as Lisa wishes to |14continue as L.L.M.’s guardian, and' the record fails to show that the guardianship has been deleterious to L.L.M. To the contrary, the record reflects that Lisa’s guardianship has greatly bene-fitted L.L.M. Also, the third situation in which a material change in circumstances can be proven, i,e. the harm likely to be caused from a change in guardianship is substantially outweighed by the advantages to the child of the modification, has not been shown. No one disputes that Kodie has remained drug free for some time now, and her drug rehabilitation is certainly commendable. However, Kodie has failed to prove that the advantages to L.L.M. gained from her self-impiovements “substantially outweigh” the harm from modifying or terminating Lisa’s guardianship of L.L.M. By all accounts, Lisa has consistently been in L.L.M.’s life, has taken care" of him, given him a stable home, obtained medical care and therapy for him, and became, in the words of Dr. Klein, a “psychological parent” to L.L.M. Kodie admitted at trial that Lisa’s care of L.L.M. benefitted him at a time when neither of his parents was in a position to provide what was best for him. Further, according to the medical records provided, L.L.M. has been diagnosed with spastic hemiparetic cerebral palsy. Dr. Karlin stated in a letter dated October 11, 2016, that L.L.M.’s “spasticity is a lifelong condition that will'require him to have ongoing physical therapy and treatments.” The record shows that Lisa has been diligent in obtaining medical care and therapy for L.L.M., and will presumably continue to obtain any medical care or assistance that L.L.M. may require. We note that comment (c) of the 2011 Official Revision Comments to La. Ch.C. art. 724 specifically provides that the material change required for modification or termination of a guardianship must occur in the circumstances of 11sthe guardian or child.[7] It provides that La. Ch.C. art, 724(D) “reflects the policy that the most important feature of a guardianship was its permanence during the'child’s minority; therefore the standard for modification or termination ought to be quite stringent.” This comment further provides that improvement of a parent’s capabilities “would not satisfy the threshold requirement that some deterioration in the quality of the guardian’s care must be demonstrated.” In the present case, the record does not show that there has been any deterioration in the quality of Lisa’s care of L.L.M. In her reasons for judgment, the trial judge noted that her findings of fact were issued pursuant to La. Ch.C. art. 724, which contains the applicable standard for modification or termination" of guardianship. She found that guardianship should be terminated, noting that she made this decision after considering the custody evaluators’ reports,[8] the best interest of the child, and a finding that Kodie has developed a stable lifestyle and is capable of caring for her child.[9] The trial court is entitled to vast discretion in matters of child custody and visitation, and its determination will not be disturbed on appeal absent a clear showing of abuse of discretion. Stephens v. Stephens, 02-402 (La. App. 1 Cir. 6/21/02), 822 So.2d 770, 774. Applying the abuse of 'discretion standard to the guardianship matter before us, we are compelled to reverse the judgment of the trial court. Considering the testimony and evidence, we find that the trial judge abused her discretion in finding that Kodie met her burden of proving the guardianship should be terminated. Specifically, the testimony and evidence | ^presented clearly did not show any material change in the circumstances of L.L.M. or Lisa, or that the harm likely to be caused from a change in the guardianship was substantially outweighed by the advantages to L.L.M. of the modification. Accordingly, we reverse the trial court’s judgment and reinstate the guardianship order. We remand to the trial court to set a visitation schedule for Kodie. DECREE For the foregoing reasons, we reverse the trial court’s December 8, 2016 judgment terminating Lisa’s guardianship of L.L.M. We reinstate the guardianship order and remand for the trial court to set a visitation schedule for the mother. REVERSED AND REMANDED . L.L.M. was hospitalized for some time due to dehydration and other symptoms during his foster care placement, . Dr. Van Beyer also met with Ben Servat, Kodie’s husband, and .she did not see any reason why L.L.M. would be at risk around Ben. . The record indicates that L.L.M. was. born at 30 weeks gestation. .During the evaluation process, Dr. Van Beyer also spoke with Lane, who indicated that he would be released from prison soon and would make every éffort to become a good father to L.L.M. However, after he was released from prison, Lane was apparently arrested again and was incarcerated at the time of this trial. . See Justice Weimer’s dissent in George v. Dugas, 16-710 (La. 11/7/16), 203 So.3d 1043, in which he discussed guardianship. law in Louisiana. , Although the guardianship' Order was initially rendered in a Mississippi court, the parties and L.L.M, have resided in Jefferson Parish, Louisiana, since the guardianship order was issued in March of 2013. By order dated March 31, 2015, the guardianship order was made a judgment of the 24th Judicial District Court. All parties agree that Louisiana law applies in this matter. . ' While statements contained in the official comments are not binding on the court, the comments to the code article represent an extrinsic aid that assists in statutory interpretation. First National Bank of Picayune v. Pearl River Fabricators, Inc., 06-2195 (La. 11/16/07), 971 So.2d 302, 314. . We note that while the custody evaluators recommended joint custody, with Kodie designated as the domiciliary custodian, the record does not show that they evaluated the situation under the stringent requirements for modification or termination of guardianship, as set forth in La. Ch.C. art. 724(D). .In her reasons for judgment, Judge Darens-burg also stated that the petition for guardianship did not comply with the requirements of La. Ch.C. art 720 and that Kodie was told to sign the guardianship papers or give up her child forever. -However, Kodie moved to have the guardianship order made executory and thus, recognized as a valid judgment in Louisiana. Because she did not appeal the guardianship order, challenging it for formal defects or vices of consent, she is precluded from challenging the validity of the original guardianship order in this proceeding.